UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 12-60-DLB

LARRY STEVENS, and STEVENS, INC.                                    PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

THE ALLSTATE CORPORATION, and
THE ALLSTATE INSURANCE COMPANY                                      DEFENDANTS

\* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Larry Stevens, an Allstate insurance agent, and his corporation, Plaintiff Stevens, Inc., commenced this action for breach of contract and several alternative theories of liability against Stevens' former employer, Defendants The Allstate Corporation and The Allstate Insurance Company (collectively "Allstate"), alleging that Allstate ended his career as an insurance agent by wrongfully terminating the parties' agency agreement. The Court has diversity jurisdiction over the instant action pursuant to 28 U.S.C. § 1332. This matter is currently before the Court on Defendants' Motion to Dismiss (Doc. # 6) and Plaintiffs' Motion to Amend (Doc. # 10). These motions are fully briefed and thus ripe for review. (*See* Docs. # 6-1, 9, 10 & 12). For the reasons set forth below, the Court will **grant** Defendants' Motion to Dismiss (Doc. # 6) and **deny** Plaintiffs' Motion to Amend (Doc. # 10).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from the Complaint unless otherwise noted. Plaintiff Larry Stevens began a career with Allstate as an insurance agent in 1970. From 1970 until

1

1999, Stevens was an employee, or "captive agent" of Allstate. In November 1999, Allstate allegedly terminated its employer/employee relationships with all of its captive insurance agents, including Stevens, and offered to allow them to continue selling Allstate insurance as independent contractors. Stevens allegedly decided to accept this offer. Because Allstate insisted that it would only form independent contractor agreements with corporations, Stevens founded a corporation called "Stevens, Inc." Stevens then formally became an independent contractor when he allegedly signed an Allstate R3001C Exclusive Agency Agreement ("the R3001C Agreement") on behalf of Stevens, Inc. For their part, Defendants allege that the R3001C Agreement never existed. Instead, they posit that Stevens "voluntarily converted from an employee agent to an independent contractor agency in 1995" by signing a R3001A Exclusive Agency Agreement (the "R3001A Agreement").[1] (Doc. 6-1, at 1).

Regardless, Plaintiffs allege that at some unspecified point, Allstate terminated the R3001C Agreement.[2] According to Plaintiffs, this termination ultimately caused Stevens to lose his entire book of business and effectively ended his insurance career. They further allege that the termination was part of a pre-conceived plan by Allstate to engage in a "hostile take-over" of their business. (Doc. # 1, at ¶ 1-7). Pursuant to this plan, Allstate

---

[1] Although Defendants have attached the R3001A Agreement to their Motion to Dismiss (Doc. # 6), the Court has not considered it so as to avoid converting the Motion to Dismiss into a motion for summary judgment. Had Plaintiffs' referred to the R3001A Agreement in their Complaint, the Court could have considered it without triggering such a conversion. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto ... and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)).

[2] Plaintiff does not allege when this termination occurred. The Complaint also contains contradictory information as to when Stevens ceased working as a captive agent. It first states that Stevens was a captive agent until 1995, but later states that he ceased working as a captive agent in 1999. The Court assumes that the reference to 1995 is a typographical error because the Complaint goes on to describe November 1999 as the month in which Stevens became an independent contractor by signing the R3001C Agreement.

allegedly made absurd production demands of Stevens, and then threatened to (and ultimately did) terminate his R3001C Agreement if he did not either meet the demands or sell his book of business. Plaintiffs allege that Allstate's motive was to replace older agents like Stevens with younger ones, and simultaneously to reap a financial benefit by taking over older agents' businesses.

Plaintiffs initiated the instant case with the filing of a Complaint on June 29, 2012. (*See* Doc. # 1). The Complaint alleges breach of contract (Count 1), breach of implied covenant of good faith and fair dealing (Count 2), and several alternative tort theories of liability. Defendants have filed a Motion to Dismiss (Doc. # 6) seeking dismissal of all counts. Plaintiffs have filed a Motion to Amend (Doc. # 10) seeking leave to amend the Complaint in light of the arguments advanced in the instant Motion to Dismiss (Doc. # 6).

### III. ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted). The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947,

3

950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**B.     Defendants' Motion To Dismiss (Doc. # 6)**

   **1.     Plaintiffs' contractual claims in Counts 1 and 2 fail because Plaintiffs have not adequately alleged the existence of the R3001C Agreement.**

"It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Harris v. American Postal Workers Union*, 198 F.3d 245 (table), 1999 WL 993882, at *4 (6th Cir. 1999). Where a plaintiff does not attach the alleged contract to his complaint, nor set forth the language of the contractual provision allegedly breached, he fails to state a claim for breach of contract. *See Northampton Restaurant Group, Inc. v. FirstMerit Bank, N.A.,* No. 10–4056, 2012 WL 2608807, at *3 (6th Cir. July 5, 2012) (affirming dismissal of breach of contract claim on 12(b)(6) grounds where plaintiff failed to attach the contract or describe the contract's provisions); *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x. 397, 401-02 (6th Cir. 2006) (affirming dismissal of breach of contract claim because plaintiff failed to allege the existence of any contractual term defendant allegedly breached)   Here, Plaintiffs allege in Count 1 that Defendants breached the R3001C Agreement, but they do not attach the Agreement, nor identify a provision that Defendants allegedly breached (or any other provisions of the contract, for that matter).

Defendants correctly argue that these omissions require dismissal of the breach of contract claim. Plaintiffs do not even bother to respond to this crucial argument. Therefore, the Court will dismiss Plaintiffs' breach of contract claim.

Plaintiffs' claim for breach of implied duty of good faith and fair dealing (Count 2) fails for the same reason. "The duties of good faith and fair dealing arise from a contractual obligation and, in the absence of such contract, no duties exist under Kentucky law." *Grisby v. UPS Ground Freight, Inc.,* No. 2007–CA–002401–MR, 2009 WL 1636293, at *3 (Ky. Ct. App. June 12, 2009) (citing *Farmer's Bank and Trust Company of Georgetown Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4 (Ky. 2005); *RAM Engineering and Construction, Inc. v. University of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003)). As the Kentucky Supreme Court has explained, "the terms of the contract and the obligation of good faith originate concurrently." *RAM Engineering, supra.* Without a properly pleaded contract, the Court cannot assume that a duty of good faith and fair dealing ever arose. The Court will therefore dismiss Count 2.

> **2. Plaintiffs' tort claims (Counts 3 - 10) also fail because the R3001C Agreement is inadequately pleaded, and for additional reasons.**
>
> **a. Fraud (Count 3)**

In addition to its pleading deficiencies, Plaintiffs' fraud claim is barred by the applicable statute of limitations. There are two statutes of limitations concerning fraud claims in Kentucky. The first statute, K.R.S. § 413.120(12), provides that fraud claims must be commenced within five years after the cause of action has accrued. The second statute, K.R.S. § 413.130(3), "provides an exception to § 413.120(12) as well as an absolute limitation on a fraud claim." *See 500 Assocs., Inc. v. Vermont American Corp.*, No. 11–5272, 2012 WL 3641802, at *4 (6th Cir. Aug. 27, 2012). The exception provides

that a cause of action for fraud or mistake does not accrue until the fraud or mistake are discovered. K.R.S. § 413.130(3). However, the limitation mandates that all fraud actions be commenced within ten years after the contract is made or the fraud is perpetrated. *Id.* In the instant case, even applying the longer statute of limitations (§ 413.130(3)), Plaintiffs' fraud claim still accrued more than ten years before they filed the instant action. Their own Complaint demonstrates this. Plaintiffs allege that Stevens, Inc. formed the R3001C Agreement with Defendants in November 1999, and that Defendants fraudulent statements were made before that. Plaintiffs filed the instant action on June 29, 2012. Plaintiffs' fraud claim is therefore barred by the statute of limitations. *See* K.R.S. § 413.130(3).

    **b.**  **Negligence (Count 4)**

To state a claim for negligence under Kentucky law, a plaintiff must establish that: (1) the defendant owed Plaintiffs a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach caused injury to the plaintiff. *James v. Meow Media, Inc.*, 300 F.3d 683, 689 (6th Cir. 2002). "[T]he existence of a duty of care to the plaintiff, and its underlying foreseeability inquiry, is a pure question of law for the court." *Id.* at 691 (internal citation omitted). Here, Plaintiffs fail to adequately allege a duty Defendants owed them. Plaintiffs assert in conclusory fashion that "Allstate was negligent of the duties of an insurer in the insurer/agent relationship." (Doc. # 1, at 64). But Plaintiffs do not explain what duty they believe Defendants (the insurer or principal) owed them (the agents).

There are only two possibilities: a duty in contract or a duty in tort. If Plaintiffs are asserting a contractual duty, that theory is foreclosed by their failure to adequately plead the R3001 Agreement. If, on the other hand, Plaintiffs are asserting a duty in tort, they have not "articulate[d] a tort claim that is independent of the contractual duties." *See Energistica, S.A. v. Mercury Petroleum, Inc.*, Civ. No. 08-60, 2008 WL 5381907, at *3 (W.D.

Ky. Dec. 22, 2008) (explaining that a party "may pursue both contractual and tort remedies arising from essentially the same conduct" only if it properly alleges a tort claim that is independent of the contractual duties at issue). Here, Plaintiffs have not articulated a duty in tort that arose independently of the parties' alleged contractual duties. Indeed, Plaintiffs' vague reference to some general "insurer/agent" obligation leaves it unclear as to what sort of duty Plaintiffs are alleging. A fiduciary duty? A duty to deal with them fairly and in good faith? A duty to refrain from conduct likely to injure their business reputation or reasonable self-respect? *See, e.g.*, Restatement (Third) of Agency § 8:15 (2006)(describing duties a principal owes to its agent that are distinct from the principal's contractual duties). Plaintiffs do not say. They also fail to cite a single case in their Response brief (Doc. # 9) establishing that an insurer owes an independent contractor *any* duty of care under Kentucky law. Furthermore, they fail to assert facts demonstrating how such a duty arose. Accordingly, their negligence claim is both conclusory and factually unsupported. It thus fails to raise their right to relief "above a speculative level" and must be dismissed. *Twombly*, 550 U.S. at 555.

    **c.**    **Intentional interference with a business relationship (Count 5) and with a prospective business relationship (Count 6)**

To sustain a claim for intentional interference with either a business relationship, or a prospective business relationship, a plaintiff must show malicious interference with the relationship in question. *Stratmore v. Goodbody*, 866 F.2d 189, 195 (6th Cir. 1989) (internal citation and quotation omitted); *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533-34 (Ky. Ct. App. 2005). Here, the alleged interference in Counts 5 and 6 is Defendants' supposed termination of the R3001C Agreement. Plaintiffs contend that by terminating the R3001C Agreement, and thus revoking Stevens' status as

an Allstate agent, Defendants prevented them from carrying out their insurance contracts with their clients, and thereby intentionally interfered with those contracts. However, the Court cannot assume that Defendants terminated a contract (the R3001 Agreement) that has been improperly pleaded. Accordingly, Plaintiffs have failed to allege the requisite interference. This alone warrants dismissal of both Counts.

Count 5, intentional interference with a business relationship, is also subject to dismissal because the plaintiff has not shown "the existence of a contract between the plaintiff and a third party." *Stratmore,* 866 F.2d at 195. Plaintiffs have neither produced their customer contracts nor properly alleged the terms of those contracts. This causes at least two problems. First, the Court cannot assume the contracts exist. Second, the Court cannot determine whether *Plaintiffs* held those contracts with third parties. It is entirely possible that *Defendants* (or anyone else for that matter) held those contracts. In fact, Defendants contend that the R3001A Agreement, which allegedly governed the parties agency relationship beginning in 1995, provided that Defendants would "own all business produced" by Stevens, Inc. (Doc. # 6-1, at 18). This would potentially make Defendants parties to the customer contracts. If this were so, Defendants could not have tortiously interfered with a contract to which they were parties. *See,* e.g., *Rawlings v. Breit*, 2003-CA-002785, 2005 WL 1415356, at *3 (Ky. Ct. App. June 17, 2005). Plaintiffs' failure to properly allege the parties to the customer contracts is thus fatal to their intentional interference with business relationship claim (Count 5).

For all of these reasons, the Court will dismiss Counts 5 and 6.

**d.     Intentional Infliction of Emotional Distress (Count 7) and Negligent Infliction of Emotional Distress (Count 8)**

Plaintiffs' intentional infliction of emotional distress ("IIED") claim fails because Plaintiffs have not pled outrageous and intolerable conduct. *See, e.g.*, *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000)(listing outrageous and intolerable conduct as a necessary element of IIED). Plaintiffs allege that "Allstate's conduct, in terminating Stevens' agency, after over four decades, was outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." (Doc. # 1, at ¶ 83). This is quintessential conclusory language. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 407 (6th Cir. 1997) (holding that outrageous and intolerable conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (internal citation omitted). It offers no facts to demonstrate that Defendants engaged in outrageous conduct. Moreover, Kentucky courts have held that ending an employment relationship, without more, does not constitute outrageous conduct. *See Benningfield v. Petit Environmental, Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005) ("Mere termination clearly does not rise to the level of outrageous conduct required to support an IIED claim."); *see also*, *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)(applying Ohio law)("[A]n employee's termination, even if based on discrimination, does not rise to the level of 'extreme and outrageous conduct.'"). While *Benningfield* and *Godfredson* dealt with employer/employee relationships, the Court finds that ending an agency relationship is no different for IIED purposes. Plaintiffs' IIED claim (Count 7) thus fails.

9

Plaintiffs' negligent infliction of emotional distress claim (Count 8) must also be dismissed because the tort of negligent infliction of emotional distress requires physical contact or injury, something Plaintiffs do not allege. *See, e.g.*, *Torres v. One Beacon Ins. Co.*, No. 04-191-KSF, 2004 WL 5565597, at *12 (E.D. Ky. Sept. 24, 2004) ("The longstanding rule in [Kentucky] is that in negligence cases there can be no recovery for fright, shock, or mental anguish which is unaccompanied by physical contact or injury."). The Court will therefore dismiss Count 8.

### e. Untitled Counts 9 and 10

Counts 9 and 10 of Plaintiffs' Complaint are untitled and do not state a cause of action. Count 9 alleges that Plaintiffs received an offer to buy Stevens, Inc., but that Defendants "intentionally interfered and took other actions which caused the bona fide purchaser to withdraw their offer." (Doc. # 1, at ¶¶ 91-92). Count 10 states that "Plaintiffs seek any and all other relief to which they may appear entitled." (*Id.* at ¶ 94). Because these are not cognizable claims, the Court will dismiss them.

### 3. Plaintiffs' Remaining Arguments

In their Response brief (Doc. # 9), Plaintiffs claim to have alleged negligent misrepresentation in their Complaint; yet, this count appears nowhere in the Complaint. They also argue that if the Court dismisses their breach of contract claim, they should be permitted to pursue an unjust enrichment claim. Plaintiffs did not plead unjust enrichment in their Complaint, and they may not amend their Complaint through their response brief. *See, e.g.*, *Berryman v. Sampson*, 110-CV-12169, 2011 WL 6450775, at *7 (E.D. Mich. Sept. 8, 2011) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's motion to dismiss."). Plaintiffs' arguments thus lack merit.

### 4. Plaintiffs' Motion to Amend (Doc. # 10)

Plaintiffs' Response brief also asks that "[i]n the event this Court finds any part of the pleadings insufficient, Plaintiff respectfully requests of this Court sufficient time for the Plaintiff to file an Amended Complaint to cure any insufficiency, if any." (Doc. # 10, at 9) This request has been separately docketed as a Motion To Amend (Doc. # 10). However, the Sixth Circuit has clearly held that such an "open request" for the Court to identify a complaint's deficiencies and to permit amendment to cure those deficiencies is improper because it is tantamount to requesting an advisory opinion. *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000). Plaintiffs' Motion to Amend (Doc. # 10) will therefore be denied.

### IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Plaintiffs' Motion to Amend (Doc. # 10) is hereby **DENIED**;

(2) Defendants' Motion to Dismiss (Doc. # 6) is hereby **GRANTED**; and

(3) Plaintiffs' Complaint (Doc. # 1) is hereby **DISMISSED WITH PREJUDICE**, and stricken from the Court's active docket.

This 21st day of January, 2013.



Signed By:
*David L. Bunning*
**United States District Judge**

G:\DATA\Opinions\Ashland\0-12-60 MOO Granting MTD.wpd